UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT THOMAS CAVALIER, CDCR #E-98747,<br><br>                                    Plaintiff,<br><br>        vs.<br><br>WARDENS POLLARD, BUCKLE and STEADMAN; CORRECTIONAL OFFICERS ARANDA, SCHARR, VADIVINOS, STONE, PULIDO and QUINONEZ,<br><br>                                    Defendants. | Case No.:  24cv1275-AJB (JLB)<br><br>**ORDER:**<br><br>**(1)  GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; AND**<br><br>**(2) DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)** |

On June 24, 2024, Plaintiff Robert Thomas Cavalier, a state inmate incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, proceeding pro se, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 in the District Court for the Northern District of California, along with a motion to proceed in forma pauperis ("IFP").  (ECF Nos. 1-2.)  The case was then transferred to this Court.  (ECF No. 6.) Plaintiff claims the Defendants, three RJD Wardens and six RJD Correctional Officers, retaliated against him for filing inmate grievances and appeals in violation of the First, Eighth and Fourteenth Amendments by taking his property, issuing false and misleading disciplinary charges, and paying another inmate to assault him.  (ECF No. 1 at 1-14.)

**I.      Motion to Proceed IFP**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405, consisting of a $350 statutory fee plus an additional administrative fee of $55, although the administrative fee does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). A prisoner seeking leave to proceed IFP must submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has insufficient assets. *See* 28 U.S.C. § 1915(b)(1)&(4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Prisoners who proceed IFP must pay any remaining balance in "increments" or "installments," regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(1)&(2); *Bruce*, 577 U.S. at 84.

In support of his IFP motion, Plaintiff has submitted a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report and Prison Certificate attested to by a CDCR trust account official. (ECF No. 5 at 1.) The document shows he had an average monthly balance of $7.85 and average monthly deposits of $8.80, with an available balance of $1.95. *Id*. Plaintiff's Motion to Proceed IFP is **GRANTED** and the Court assesses an initial partial filing fee of $1.76. Plaintiff remains obligated to pay the remaining $348.24 in monthly installments irrespective of whether this action is dismissed. *Bruce*, 577 U.S. at 84; 28 U.S.C. § 1915(b)(1)&(2).

/ / /

## II.      Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A.      Standard of Review

Because Plaintiff is a prisoner proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  The Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).")  Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quote marks omitted).  "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**B.     Allegations in the Complaint**

Plaintiff alleges that around February 23, 2021, he "started noticing Officers inexplicably harassing and vexing him after having witnessed excessive use of force and ghost writing a complaint for the inmate." (ECF No. 1 at 7.)  Defendant Correctional Officer Pulido "was the first to target" Plaintiff by issuing a false and misleading Rules Violation Report ("RVR").  (*Id*.)  Plaintiff filed several inmate grievances against Pulido for filing the RVR.  (*Id*.)  The RVR was dismissed in the interests of justice when video evidence showed Pulito approach Plaintiff's cell and wake him up by banging a clipboard on the cell door which started a verbal argument.  (*Id*. at 7-8, 11-12.)  Although the video showed that Pulido lied in the RVR, he was never disciplined.  (*Id*. at 8.)

On March 28, 2021, Plaintiff was moved from Facility A, a level III yard, to Facility C, a level IV yard, in violation of CDCR regulations.  (*Id*. at 8, 12.)  He was told by the Classification Committee he should not be housed on Facility C and they could not explain who moved him or why, and he was moved back to Facility A after about three weeks.  (*Id*. at 8.)  He filed an inmate grievance complaining of staff misconduct.  (*Id*.)

On September 9, 2021, "after months of walking on eggshells" in fear of false and misleading RVRs, Defendant Correctional Officer Quinonez demanded Plaintiff wear his mask outside.  (*Id*.)  Plaintiff refused under CDCR health regulations as the temperature was over 90 degrees and he has asthma.  (*Id*. at 8, 12-13.)  Quinonez used profanity and threatened to issue a false and misleading RVR, which she did, and Plaintiff responded with several inmate grievances.  (*Id*. at 8.)  Defendant Correctional Officer Scharr found him guilty on that RVR based on redacted video evidence which did not show Quinonez' use of profanity or her threat to file a false RVR.  (*Id*.)  The guilty finding was reversed but Scharr's misconduct was never addressed, allowing Scharr "to act with impunity" by Defendant Warden Steadman.  (*Id*.)  Headquarters determined Plaintiff did not need to wear a mask because the incident occurred outdoors, but Warden Steadman circumvented that finding by ordering the RVR reissued and reheard rather than vacated.  (*Id*.)

/ / /

On December 2, 2021, Defendant Correctional Office Aranda refused to sign and process Plaintiff's outgoing legal mail.  (*Id*.)  Plaintiff filed an inmate grievance accusing Aranda of misconduct, and in response Defendants Correctional Officers Stone and Vadivinos filed two separate RVRs charging Plaintiff with making false allegations of staff misconduct.  (*Id*. at 8, 13.)  Plaintiff was found guilty at the adjudication of the RVR log written by Vadivinos after an unfair hearing and filed inmate grievances alleging staff misconduct and conspiracy to obstruct justice.  (*Id*. at 8, 13-14.)  He alleges Defendants Wardens Steadman, Buckle and Pollard had substantial documentary evidence of a miscarriage of justice in their audit of that RVR.  (*Id*. at 8.)  The RVR written by Stone was dismissed after repeated requests for video evidence were denied.  (*Id*. at 9.)

Plaintiff alleges that by April 7, 2022, the four RVRs were used to strip him of his level III custody status and caused his placement on "C-status," "thereby stripping him of all personal property forcing him to send hundreds of dollars of appliances home at expense."  (*Id*.)  He was placed on a level IV yard where Stone orchestrated a May 20, 2022, assault and the theft of his property, about which Plaintiff filed several inmate grievances.  (*Id*.)  Plaintiff alleges Stone gave Plaintiff's radio, watch, shoes and shorts to the inmate who assaulted him as payment for the assault, which resulted in traumatic brain injury and loss of mobility.  (*Id*.)  Plaintiff alleges the RVRs and custody level changes will have a negative impact on his parole eligibility, and claims violations of the First, Eighth and Fourteenth Amendments.  (*Id*. at 5, 9.)

### C.   Discussion

#### a)   Fourteenth Amendment Due Process Claim

Plaintiff claims he was denied due process under the Fourteenth Amendment in connection to: (1) his transfer to a higher level custody yard at RJD, (2) the taking of his personal property, (3) the impact on parole eligibility, and (4) the four RVRs: (a) one by Pulito which was dismissed, (b) one by Stone which was dismissed, (c) one by Quinonez which was reissued and reheard rather than vacated in circumvention of a Headquarters determination that Plaintiff was not guilty, and (d) one by Vadivinos in which Wardens

Steadman, Buckle and Pollard had substantial documentary evidence of a miscarriage of justice. Although Plaintiff attaches approximately 133 pages of documents to the Complaint including the RVRs, their appeals and his inmate grievances, Plaintiff may not rely on these documents as a substitute for factual allegations necessary to support his claims, which are required to be included in the Complaint. *See Arnold v. Hearst Magazine Media, Inc*., No. 19cv1969-JAH (MDD), 2020 WL 3469367, at *8 (S.D. Cal. June 24, 2020) ("Exhibits attached to a complaint are not a substitute for factual allegations.")

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

With respect to the RVRs, a prisoner is entitled to due process protections during a disciplinary hearing where protected liberty interests are at stake. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003). To show that a disciplinary proceeding implicates a liberty interest protected by the Due Process Clause, a prisoner must show that his sentence was exceeded in "an unexpected manner" or resulted in "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. If no such liberty interest is implicated, a prisoner is granted minimum due process, which requires only that the outcome be "supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985). If a protected liberty interest arises, due process requires written notice of the charges and evidence relied on and the reasons for the action taken, an opportunity "to call witnesses and present documentary evidence in defense when" doing so "will not be unduly hazardous to institutional safety or correctional goals," assistance at the hearing if necessary, and an impartial factfinder. *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974).

Plaintiff's allegations regarding the filing of false disciplinary charges does not state a due process claim because "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports." *Buckley v. Gomez*, 36 F.Supp.2d 1216, 1222 (S.D. Cal. 1997), aff'd, 168 F.3d 498 (9th Cir. 1999); *see also e.g. Gadsden v. Gehris*, No. 20cv0470-WQH (DEB), 2020 WL 5748094, at *8 (S.D. Cal. Sep. 25, 2020) ("The allegations of the filing of false disciplinary charges by itself does not state a claim under 42 U.S.C. § 1983 because federal due process protections are contained in the ensuing disciplinary proceedings themselves.")  Although Plaintiff challenges the evidence used at his disciplinary hearings, he has not plausibly alleged they were not "supported by some evidence in the record" sufficient to satisfy due process.  *Hill*, 472 U.S. at 454-55.

Even if a liberty interest arose, Plaintiff has not alleged due process violations from the two dismissed RVRs and the reissued and reheard RVR.  *See Frank v. Schultz*, 808 F.3d 762, 764 (9th Cir. 2015) (no deprivation of due process rights where procedural error was corrected through the administrative appeal process); *see also Torricellas v. Poole*, 954 F. Supp. 1405, 1414 (C.D. Cal. 1997) ("Where a procedural error has been corrected in the administrative process, as it was here, there has been no compensable due process violation. The administrative appeal is considered part of the process afforded, and any error in the process can be corrected during that appeals process without necessarily subjecting prison officials to liability for procedural violations at lower levels."), *affirmed*, 141 F.3d 1179 (9th Cir. 1998).  There are no allegations that any procedural protections were denied at the hearing on the fourth RVR.  *See Wolff*, 418 U.S. at 564-71.

Plaintiff has not stated a claim based on the allegations that his personal property was stolen and that he was required to send appliances home at his own expense.  When a state provides an adequate post-deprivation remedy for the taking of a prisoner's property, through a state tort action for example, the existence of that remedy satisfies the requirements of federal due process.  *Zinermon v. Burch*, 494 U.S. 113, 128 (1990).  The Ninth Circuit has recognized that California law provides such a remedy.  *See Barrett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994), citing Cal. Gov't Code §§ 810-895.

Plaintiff has not stated a due process claim based on his transfer within RJD from a lower to a higher custody level because inmates do not have a due process right to a particular classification or custody level. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) ("[A] prisoner has no constitutional right to a particular classification status."); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (concluding California prisoner does not have liberty interest in residing at a level III prison as opposed to level IV prison); *Sandin*, 515 U.S. at 480 ("The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed.")

Plaintiff has not stated a due process claim based on his concern that his future parole consideration may be affected by the disciplinary actions and custody level increase. *See Swarthout v. Cooke*, 562 U.S. 216, 220 (2011) ("Whatever liberty interest [in parole that] exists is, of course, a *state* interest created by California law.") Due process requires a parole applicant be given an opportunity to be heard and a statement of reasons for a denial of parole, and "[t]he Constitution does not require more." *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 16 (1979); *see also Roberts v. Hartley*, 640 F.3d 1042, 1046 (2011) ("there is no substantive due process right created by the California parole scheme. If the state affords the procedural protections required by *Greenholtz* and *Cooke*, that is the end of the matter for purposes of the Due Process Clause.")

Plaintiff's Fourteenth Amendment due process claim is dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### b) First Amendment Retaliation Claim

Plaintiff claims Defendants filed the false RVRs in retaliation for his having filed grievances and administrative appeals complaining of staff misconduct, including one he filed on behalf of another inmate. "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

24cv1275-AJB (JLB)

advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). The alleged adverse action need not be an independent constitutional violation. *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights.") Plaintiff must allege a retaliatory motive, that is, a causal connection between the adverse action and protected conduct. *Watison*, 668 F.3d at 1114.

Plaintiff has plausibly alleged an adverse action was taken against him for his protected activity of filing inmate grievances by the filing of an allegedly false disciplinary charge and that it created a chilling effect. *Id.* at 1114-15. However, he has not set forth factual allegations which plausibly allege a retaliatory motive, that is, a causal connection between the adverse action and his protected conduct. *Id.* at 1114. He alleges he "started noticing Officers inexplicably harassing and vexing him after having witnessed excessive use of force and ghost writing a complaint for the inmate." (ECF No. 1 at 7.) The Complaint is lacking any specific factual allegations regarding why Plaintiff contends any Defendant took any action in response to his protected activity. Rather, Plaintiff appears to assume they did because the events alleged in the Complaint began shortly after he filed a complaint of excessive use of force on behalf of another inmate, and then continued while he filed grievances and appeals after each RVR. Such allegations do not plausibly allege a retaliatory motive. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials retaliated on the basis of an inmate's First Amendment activity, and although the timing of a defendant's actions may "be considered as circumstantial evidence of retaliatory intent," timing alone is generally not enough to support an inference of retaliatory intent); *Iqbal*, 556 U.S. at 678 (the "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" do not state a § 1983 claim for relief); *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam) ("The [First Amendment] right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to

24cv1275-AJB (JLB)

maintain prison security.”); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (“The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.”)

Plaintiff’s First Amendment retaliation claim is dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### c) Eighth Amendment Claim

“[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, ‘sufficiently serious.’” *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, Plaintiff must allege the prison official he seeks to hold liable had a “sufficiently culpable state of mind,” that is, “one of ‘deliberate indifference’ to” his constitutional rights. *Id.,* quoting *Wilson*, 501 U.S. at 302-03.  An objectively serious deprivation is a denial of “the minimal civilized measures of life’s necessities.” *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996), quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

The allegations in the Complaint regarding the filing of false or misleading RVRs, stolen and dispossessed personal property, transfers, and their negative effect on parole, are insufficient to plausibly allege that any Defendant deprived Plaintiff of “the minimal civilized measures of life’s necessities.”  *See Wilson*, 501 U.S. at 298 (“[O]nly those deprivations denying the minimal civilized measure of life’s necessities are sufficiently grave to form the basis of an Eighth Amendment violation.”) (internal citation and quote marks omitted); *Iqbal*, 556 U.S. at 678 (“Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice” to state a § 1983 claim); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (“[E]xtreme deprivations are required to make out a conditions-of-confinement claim.  Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life’s necessities are sufficiently grave to form

the basis of an Eighth Amendment violation.") (internal quote marks and citation omitted); *see also Morrison v. Madden*, No. 22cv0925-MWF (MAA), 2023 WL 9601240, *4 (C.D. Cal. July 27, 2023) ("[T]he Supreme Court has never recognized an Eighth Amendment claim in the parole denial context."), citing *Greenholtz*, 442 U.S. at 7 and *Swarthout*, 562 U.S. at 220.

The Complaint also alleges that Defendant Stone gave Plaintiff's radio, watch, shoes and shorts to the inmate who assaulted him as payment for the assault, which resulted in Plaintiff suffering traumatic brain injury and loss of mobility. (ECF No. 1 at 9.) The failure of prison officials to protect inmates from attacks by other inmates violates the Eighth Amendment when: (1) the deprivation alleged is "objectively, sufficiently serious" and (2) the prison officials had a "sufficiently culpable state of mind," acting with deliberate indifference. *Farmer*, 511 U.S. at 834 (internal quotations omitted). Although the allegation Stone paid an inmate to assault Plaintiff, if true, would state an Eighth Amendment claim, Plaintiff is not permitted to rely on entirely conclusory allegations such as set forth with respect to this claim. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a § 1983 claim). If Plaintiff wishes to pursue this claim, he must set forth *factual* allegations which plausibly support his claim that Stone paid an inmate to assault him.

Plaintiff's Eighth Amendment claim is dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

**D.   Leave to Amend**

In light of his pro se status, the Court grants Plaintiff leave to amend his Complaint in order to attempt to address the pleading deficiencies identified in this Order. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quote marks omitted).

/ / /

### III.    Conclusion and Orders

Accordingly, good cause appearing, the Court:

1) **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2).

2) **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $1.76 initial filing fee as well as the remaining $348.24 balance of the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2).

3) **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

4) **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1) and **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does

/ / /

not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED**.

Dated:  October 2, 2024

Hon. Anthony J. Battaglia
United States District Judge

24cv1275-AJB (JLB)